## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RAYMOND MELANCON                                        CIVIL ACTION

VERSUS                                                          NO. 18-12754

S.W. "SANDY" McCAIN                                   SECTION: "B"(1)

## REPORT AND RECOMMENDATION

Petitioner, Raymond Melancon, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

By Bill of Information, petitioner was charged with distribution of heroin, possession with the intent to distribute heroin, and possession of a firearm by a felon under Louisiana law.[1] His first trial on those charges ended in a mistrial.[2] He was then retried, and the Louisiana Fifth Circuit Court of Appeal summarized the evidence at that trial as follows:

> At trial, Detective Gary Barteet testified that in September of 2012, he was working in the narcotics division of the Jefferson Parish Sheriff's Office, and he received information that caused him to conduct an investigation of defendant. Surveillance was established, and defendant was seen going to what the officers refer to as "neutral locations," such as shopping centers, fast food restaurants, and busy parking lots. Detective Barteet testified that drug dealers and drug users often meet in these neutral locations in order to conduct drug transactions. The police also observed that defendant went to an apartment complex at 650 Bellemeade frequently enough for the surveillance team to believe that he had access there, although a particular apartment was not identified.
>
> On September 28, 2012, while conducting surveillance, Detective Barteet saw defendant driving a gray Chevrolet truck in the 1500 block of Lapalco Blvd. in Harvey, Louisiana, near a Popeye's restaurant. Detective Barteet watched defendant to see if he was just eating or if he was doing anything suspicious.

---

[1] State Rec., Vol. 1 of 14, Bill of Information.
[2] State Rec., Vol. 6 of 14, transcript of September 12, 2013; State Rec., Vol. 5 of 14, minute entry dated September 12, 2013.

Defendant never entered a business; rather, he moved from one position to another inside the parking lot and just parked. Based on that information, Detective Barteet contacted his superiors and told them that he believed a potential narcotics transaction would occur, but he left before any transaction took place.

Brook Franklin testified that she knew defendant through a mutual friend, that they "hung out" together, and that she bought drugs from him. On September 28, 2012, Ms. Franklin called defendant when she got off of work and defendant told her to meet him at the Domino's Pizza near her home. Ms. Franklin drove to the location in her Toyota Corolla with a friend in the front passenger seat. Upon arriving, defendant waved her down after exiting Popeye's, which was near Domino's, and then got into the back seat of Ms. Franklin's car. Ms. Franklin moved to the driver's side back seat and purchased "a bag" from defendant. Defendant then walked away and Ms. Franklin left in her car.

Soon after meeting with defendant, Ms. Franklin was pulled over by an unmarked police car. Two officers approached her car and ordered her out of her vehicle. Ms. Franklin complied. She attempted to hide the bag she had just bought but was unsuccessful; it "rolled down" and the officers picked it up. The officers also found paraphernalia in the car, a spoon, which was in "open view."

Ms. Franklin testified that she had been charged with possession of heroin in relation to this case and was in the State's diversion program, but she said she had not been provided a "deal" by the State in exchange for information or testimony.

Detective Patrick Evans testified that he was employed by the Jefferson Parish Sheriff's Office on September 28, 2012, when he received a call to assist a narcotics unit in an investigation. Pursuant to the instructions given to him, Detective Evans stopped a Toyota Corolla, which was occupied by two white females, on Bannerwood just off of Lapalco. When Detective Evans and another officer approached the vehicle, Detective Evans saw a metal spoon in the car, which he knew was commonly used to cook heroin before loading it into a syringe. At that time he asked the driver, Brook Franklin, to exit the vehicle. When she stepped out of the car, a clear plastic bag containing a brown powder substance he believed to be heroin fell to the ground from her lap. Ms. Franklin was placed in handcuffs and advised of her rights. Ms. Franklin told Detective Evans that she had purchased the heroin "from a black male named Ray from the Popeye's at Manhattan and Lapalco."

Agent Christy Clement of the Jefferson Parish Sheriff's Office testified that on September 28, 2012, she participated in the investigation of defendant. She saw a vehicle pull up and defendant exit the Popeye's and get into the rear passenger side of the vehicle. The driver, Brook Franklin, exited the driver's side and got into the rear driver's side of the car. Thirty seconds to one minute later, Ms. Franklin got out of the car and back into the driver's seat and appeared to be putting something in her pocket. Defendant then exited the vehicle and walked into the Domino's while Ms. Franklin left in her car. From her position, Agent Clement could not see exactly what Ms. Franklin put into her pocket, but based upon her

past experience it appeared to be a narcotics transaction. Agent Clement testified that defendant was taken into custody at the Domino's location after a brief struggle.

Agent Clement also participated in the interview of Brook Franklin. Ms. Franklin was advised of her <u>Miranda</u>[FN 2] rights, and Ms. Franklin indicated that she wished to waive her rights and cooperate. Ms. Franklin then told Agent Clement that she had purchased heroin from defendant on several occasions. She stated that she sometimes purchased it from him at an apartment on Bellemeade and she was aware of the location of the apartment. Ms. Franklin also said that defendant had 50 to 100 bags of heroin with him when she bought heroin from him that day. When questioned about defendant not having anything on his person when he was arrested, Ms. Franklin said that she may have been confused because she had also purchased from defendant earlier in the day. Ms. Franklin described defendant's vehicle and later pointed out defendant's apartment to police while still in custody after physically travelling to the location.

[FN 2]  <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After defendant was arrested, Detective Barteet learned that defendant was attempting to have family members remove items from his apartment and retrieve money for his bond. Detective Barteet obtained a search warrant for 650 Bellemeade, Apartment 4-K, because this apartment had been identified as belonging to defendant.

During execution of the search warrant, several items were discovered, including a nine millimeter semi-automatic pistol with a loaded magazine, a gun case with spare magazines, various documents in the name of Raymond Melancon, two clear plastic bags with brownish powder that tested positive for heroin, one larger clear plastic bag with brownish powder that tested positive for heroin, a digital scale with brownish powder residue, a bottle of GNC inositol,[FN 3] a blender with brownish powder residue,[FN 4] a Samsung cell phone, and $20,000.00 in U.S. currency.

[FN 3]  Detective Barteet testified that inositol is a powder typically "used in the cutting procedure of narcotics" which allows the seller to "make a larger quantity."

[FN 4]  Detective Barteet stated that a blender is often used to help with the cutting process and preparation of heroin.

Margie Barfield testified that she was the property manager of Bellemeade Apartments, that her office was on the premises, and that she also resided in the apartment complex. She was generally familiar with the "comings and goings" of people who rent the apartments. Danielle McGinnis was the leaseholder for Apartment 4-K and defendant was listed as her employer. However, during the six-month rental period from May 1, 2012 through October 31, 2012, Ms. Barfield only

saw Ms. McGinnis three times:  when she applied for the apartment, when she signed the lease, and when she gave notice that the apartment would be vacated. During the entire term of the lease, Ms. Barfield never saw anyone "drop by that apartment other than the defendant."  She also saw defendant driving vehicles that were listed on the parking registration for Apartment 4-K.[3]

Based on that evidence, petitioner was convicted of distribution of heroin, possession with the intent to distribute heroin, and possession of a firearm by a felon as charged.[4]  He was then sentenced as follows:  thirty years on the distribution conviction; thirty years on the possession with intent to distribute conviction; and twenty years on the firearm conviction.  It was ordered that the sentences on the two drug convictions be served without benefit of probation or suspension of sentence for five years.  It was further ordered that the entire term of the firearm conviction be served without parole, probation, or suspension of sentence.  Lastly, it was ordered that all sentences be served concurrently.[5]  On January 15, 2014, petitioner was thereafter found to be a third offender and was resentenced as such on the distribution conviction to a concurrent term of forty years imprisonment without probation or suspension of sentence.[6]  On September 24, 2014, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[7]  The Louisiana Supreme Court then denied his related writ application on May 22, 2015.[8]

On July 1, 2016, petitioner filed a counseled application for post-conviction relief with the state district court.[9]  On September 6, 2016, he filed a *pro se* amendment to that application.[10]  The

---

[3] State v. Melancon, 151 So. 3d 100, 104-06 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 14.
[4] State Rec., Vol. 7 of 14, transcript of December 5, 2013, pp. 41-42; State Rec., Vol. 1 of 14, minute entry dated December 5, 2013; State Rec., Vol. 1 of 14, jury verdict forms.
[5] State Rec., Vol. 7 of 14, transcript of December 16, 2013; State Rec., Vol. 1 of 14, minute entry dated December 16, 2013.
[6] State Rec., Vol. 7 of 14, transcript of January 15, 2014; State Rec., Vol. 1 of 14, minute entry dated January 15, 2014.
[7] State v. Melancon, 151 So. 3d 100 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 14.
[8] State v. Melancon, 170 So. 3d 982 (La. 2015); State Rec., Vol. 1 of 14.
[9] State Rec., Vol. 2 of 14.
[10] State Rec., Vol. 2 of 14.

state district court denied relief,[11] and his related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on May 26, 2017.[12]

While those proceedings were ongoing, petitioner returned to the state district court to file a *pro se* application for post-conviction relief on May 19, 2017,[13] which was likewise denied on May 30, 2017.[14]   The Louisiana Fifth Circuit Court of Appeal then denied his related writ application on August 16, 2017.[15]

In the interim, petitioner's counsel had filed a writ application with the Louisiana Supreme Court challenging the denial of the first post-conviction application.  To challenge the denial of the second post-conviction application, petitioner then filed a *pro se* writ application, which was apparently docketed by the Clerk of the Louisiana Supreme Court as a supplement to the pending counseled writ application.  The Louisiana Supreme Court denied relief on November 14, 2018.[16]

On November 29, 2018, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[17]   The state filed a response conceding that the application is timely but arguing that relief is unwarranted,[18] and petitioner filed a reply to that response.[19]

---

[11] State v. Melancon, No. 1205762, 2017 WL 2998865 (La. Dist. Ct. Jan. 10, 2017); State Rec., Vol. 3 of 14, Order dated January 3, 2017.
[12] State v. Melancon, No. 17-KH-164 (La. App. 5th Cir. May 26, 2017); State ex rel. Melancon v. Vannoy, No. 17-KH-80 (La. App. 5th Cir. May 26, 2017); State Rec., Vol. 4 of 14.
[13] State Rec., Vol. 4 of 14.
[14] State v. Melancon, No. 1205762, 2017 WL 2998864 (La. Dist. Ct. May 30, 2017); State Rec., Vol. 4 of 14, Order dated May 30, 2017.
[15] Melancon v. State, No. 17-KH-342 (La. App. 5th Cir. Aug. 16, 2017); State Rec., Vol. 4 of 14.
[16] State v. Melancon, 256 So. 3d 982 (La. 2018); State Rec., Vol. 4 of 14.
[17] Rec. Doc. 1.
[18] Rec. Doc. 13.
[19] Rec. Doc. 16.

As an initial matter, the undersigned notes that the instant case presents challenges on habeas review.

First, because post-conviction relief was sought in a disorganized manner and the resulting rulings are not always clear, parts of petitioner's claims *may* be unexhausted and/or procedurally barred as argued by the state in its response.[20]  However, because the undersigned cannot say that with any degree of certainty, it is recommended that the claims simply be considered and denied on the merits.[21]

Second, as the state also notes, petitioner's "arguments are ambiguous, convoluted and/or repetitive"[22] and his "claim(s)/arguments … are difficult to ascertain."[23]  That characterization is

---

[20] Rec. Doc. 13, pp. 11-16.

[21] A federal court has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998) ("[E]ven when … exhaustion is not waived, courts have the discretion in each case under § 2254(b)(2) to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith." (quotation marks and brackets omitted)); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *26 n.68 (E.D. La. Oct. 25, 2013); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Additionally, a federal court may choose to look past a possible procedural default if a claim can be resolved more easily on the merits.  See, e.g., Swain v. Thaler, 466 F. App'x 393, 397 n.2 (5th Cir. 2012); Adams v. Thaler, 421 F. App'x 322, 336 (5th Cir. 2011); Lande, 2013 WL 5781691, at *26 n.68; Brian R. Means, Federal Habeas Manual § 9B:5 (2019) ("[W]here the procedural default question is relatively complicated or when relief is due to be denied even if claims are not procedurally barred, a federal court is authorized to skip over the procedural default issue and proceed to deny the claim on the merits.").

When a federal habeas court reviews the merits of claims that were unexhausted or denied by the state courts on procedural grounds, those claims are reviewed *de novo*.  See Miller v. Johnson, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits."); Brian R. Means, Federal Habeas Manual § 3:7 (2019) ("In the absence of a state-court merits adjudication, the federal claim is reviewed *de novo* by the federal court in habeas corpus proceedings.").  Because it is unclear whether all parts of petitioner's claims were adjudicated on the merits, the Court will review all parts of the claims *de novo* for the sake of simplicity.  This is permissible because "an applicant who is not entitled to relief under a *de novo* standard of review necessarily will not be entitled to relief under the less favorable standard of AEDPA deference."  Lewis v. Thaler, 701 F.3d 783, 787 n.1 (5th Cir. 2012); accord Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can … deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).").

[22] Rec. Doc. 13, p. 18 n.9.

[23] Id. at p. 36.

accurate.  In his federal application, petitioner discusses his claims in sections labeled "Point I" and "Point II"; however, those labels are deceptive, in that the sections are in fact meandering discussions which touch on myriad different points.

Nevertheless, in broad strokes, it appears that petitioner is claiming that his counsel was ineffective for failing to adequately investigate the case and to pursue efforts to have evidence suppressed under the Fourth Amendment.[24]  Specifically, he contends:

1.    Counsel should have filed motions to suppress the recording of a jailhouse telephone call of October 1, 2012, and the testimony of Brook Franklin;

2.    Counsel should have secured a ruling on a reurged motion to suppress the evidence discovered during the apartment search;

3.    Counsel should have challenged the legality of petitioner's arrest; and

4.    Counsel should have conducted a more thorough pretrial investigation.

Ineffective assistance of counsel claims are analyzed using the test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Specifically, in order to prevail on such a claim, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.  Id. at 697.  The petitioner bears the burden of proof and "must demonstrate,

---

[24] As to the suppression component of his claims, petitioner is clearly precluded from litigating his underlying Fourth Amendment claims in this federal court.  See Stone v. Powell, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnote omitted)); Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity.  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."); Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ("It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." ).  However, it is equally clear that "Stone v. Powell does not bar an ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate a Fourth Amendment claim."  Moreno v. Dretke, 450 F.3d 158, 168 n.6 (5th Cir. 2006) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).

by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Mindful of those controlling principles, the Court will now discuss each of petitioner's contentions.

### I.  Telephone Recording/Franklin's Testimony

Petitioner first contends that counsel was ineffective for failing to move to suppress the recording of a jailhouse telephone call of October 1, 2012, and the testimony of Brook Franklin. That aspect of petitioner's claim fails because there were no legal grounds for suppressing that evidence.

As to the telephone call recording, recordings of a prisoner's jail telephone conversations are admissible under Louisiana law as long as they are relevant. See, e.g., State v. Farrier, 162 So. 3d 1233, 1242 (La. App. 4th Cir. 2015).  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  La. Code Evid. art 401. In the instant case, petitioner disputed – and continues to dispute – that the apartment at 650 Bellemeade was his apartment.  However, in the telephone call, he asked a family member to retrieve $23,000 from the pocket of a pair of pants in his apartment closet so that he could use the money for his bail.[25]  When the Bellemeade apartment was then searched, officers found $20,000 in cash in the pocket of a pair of pants in the apartment closet.  Therefore, the telephone call was

---

[25] A transcript of the telephone call appears in Volume 4 of the State Court Record.

relevant to directly link petitioner to the apartment where the weapons, drugs, and drug distribution paraphernalia were found. As a result, it was clearly relevant to one of the central issues at trial.[26]

As to as Franklin's testimony, there was likewise no basis for disallowing that testimony. Here, petitioner argues that not all of Franklin's statements to the police could be verified and that her statements were inconsistent with those of Mullins, the passenger in Franklin's car at the time of her arrest. However, even if that is true, those discrepancies might serve as a basis for arguing to the jury that Franklin's testimony was not credible and should be given little weight, but they did not render her testimony inadmissible. See State v. Van Zant, 256 La. 546, 550-51, 237 So. 2d 372, 374 (1970).

For these reasons, motions to suppress the telephone call recording and Franklin's testimony would have been baseless. Therefore, this aspect of petitioner's claim fails because "[c]ounsel is not required by the Sixth Amendment to file meritless motions." United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

---

[26] Petitioner argues that he was not referring to the apartment on Bellemeade in the telephone call. That argument is unpersuasive. It is true that he simply said in the call that the money could be found in "my apartment" without stating the apartment's address. However, law enforcement officers had already established through other means that petitioner used the Bellemeade address as his apartment, and the money was in fact found there as described.

Doubling down, petitioner next argues that he obviously was not referring to the money found in Bellemeade apartment because that money was confiscated by the police, and yet he was still able to pay his bail. However, that in no way proves that he was not referring to the Bellemeade apartment in the telephone call. At most, it shows only that not all of his cash was stored at the Bellemeade apartment. That is hardly surprising, because a drug dealer who chooses to keep his distribution proceeds in cash might well choose to store that cash at more than one location in order to minimize his risk.

## II.  Evidence at the Apartment

Petitioner next contends that counsel was ineffective for failing to secure a ruling on a reurged motion to suppress the physical evidence discovered during the apartment search.  The record reflects that petitioner's original counsel, Juan Labadie, filed a motion to suppress the physical evidence.[27]  On July 18, 2013, the trial court held a pretrial suppression hearing at which Labadie challenged the truthfulness of the affidavit submitted by Detective Gary Barteet to secure the search warrant.[28]  In that affidavit, Barteet stated:

> On 09/28/2012, members of the Jefferson Parish Sheriff's Office Narcotics Division established a surveillance of Raymond Melancon for alleged distribution of heroin in the Harvey area.  Agents received an anonymous complaint via the narcotics hotline identifying Melancon by name, date of birth and address as a distributor of heroin.  Research revealed Melancon to have several prior arrests for narcotics violations and resisting arrest with violence.  Research also confirmed the date of birth and address provided by the anonymous information.  Armed with the information, agents began periodic surveillance of the target and on 09/27/2012, agents observed Melancon operating the described vehicle, registered to him, conduct a hand-to-hand transaction with a white female in the parking lot of Popeyes in the 1500 Blk. Of Lapalco Blvd. in Harvey.  Agents maintained surveillance of Melancon as he entered his vehicle and traveled to the Domino's Pizza located at 1525 Lapalco and entered the business.  Additional agents then followed the white female, operating a 2007 Toyota Carolla LA #RPB435, from the location and ultimately conducted a stop of the vehicle away from the target at the intersection of Bannerwood & Lapalco in Gretna.  Agents advised the driver, identified as Brook Franklin (W/F, DOB: [redacted]) of their observations and asked her to exit the vehicle after observing a bent, burnt spoon on her lap consistent heroin [sic] paraphernalia.  As she exited a small clear bag of brownish powder fell to the ground.
> Agents advised her and the passenger (identified as Katherine Mullins W/F, DOB: [redacted]), of their Miranda warning to which each indicated that they understood.  Franklin admitted to purchasing a quantity of heroin from a black male named "Ray" at in [sic] the Popeyes parking lot.  She further advised purchasing quantities of heroin from him on numerous occasions at parking lots in the Harvey and Gretna area as well as his various residences. Franklin stated that "Ray" was in possession of an estimated 100 bags of heroin at the time of her purchase.  A

---

[27] State Rec., Vol. 5 of 14.
[28] State Rec., Vol. 6 of 14, transcript of July 18, 2013.

preliminary field test of the brownish powder revealed a positive test for heroin and weighed 0.4 grams.  Franklin was placed under arrest and transported to the Investigations Bureau.

During this time, agents maintained surveillance of Melancon at the Domino's Pizza at 1525 Lapalco Blvd. and observed him walking in an [sic] out of the business to his vehicle (aforementioned truck) entering both the driver and passenger side then reentering the business.  Based on the arrest and seizure of heroin from Franklin, her admission of purchasing heroin from "Ray" and the fact that several agents witnessed the transaction, agents elected to place Melancon under arrest for distribution of heroin relative to the narcotics seized from Franklin.

Agents approached Melancon inside of the business and asked him to step outside.  He exited and was then advised that he was under arrest and he immediately resisted agents attempts to place him into custody.  After a brief struggle to include the use of a Taser, he was taken into custody.  Melancon's vehicle was secured and towed to the Investigations Bureau.  Melancon declined to provide a statement and showered agents with obscenities and denied any knowledge of illegal narcotics.  A search of his person after arrest revealed no illegal controlled substances.  Based on Franklin's statement of Melancon being in possession of an additional quantity of heroin and no narcotics discovered on his person and the fact that he made several trips to the vehicle before and after the transaction, agents surmised that the controlled substance is currently concealed inside the 2002 Chevrolet Truck (LA #X818590) registered to suspect Raymond Melancon.

Agents spoke to employees of the Dominos, who declined to provide formal statements, but advised that the suspect (Melancon) comes to their business regularly orders a pizza and constantly exists to meet with people in the parking lot while using a cellular phone.  Franklin's arrest will be documented under JPSO item I-31006-12.

On 10/01/2012, in furtherance of the arrest of Melancon relative to the distribution of heroin, agents executed a search warrant of his vehicle and discovered no articles of evidence.  During follow-up investigation, Detective Barteet learned from a reliable source of information that Melancon is concealing at least $23,000 USD inside his residence and was attempting to have a family member obtain the keys from his property at the Correctional Center and remove articles from his residence.

Melancon has (4) four convictions for violations relative to illegal narcotics possession and distribution.  Melancon also has a conviction for Battery of a Correctional Officer.  During the course of the investigation of Melancon, agents followed him to an apartment at 650 Bellemeade Blvd. Gretna, La 70056.  Confidential source information advised that he maintained a residence at that location.  Based on his activities thusfar [sic], recent information received relative to a large sum of currency hidden his [sic] residence and the totality of the investigation into Melancon's distribution of heroin, agents believe that he is concealing additional quantities of heroin and currency inside the residence.

Agents confirmed Melancon as an occupant of apartment 4K at the Bellemeade Apartment complex located at 650 Bellemeade Blvd. Gretna, La. 70056. Melancon's 2000 Mazda 626, bearing LA VNN687 is registered to the apartment, which is registered to Danielle Mcginnis. Agents confirmed that Melancon brings payment for the apartment each month in the form of a money order.[29]

The trial court denied Labadie's motion to suppress at the hearing.[30]

As the result of a conflict which subsequently arose between Labadie and petitioner, the first trial on these charges ended in a mistrial.[31] Due to that conflict, petitioner retained new counsel, Eddie Jordan. A new trial was then held, the evidence from the search was introduced (because Labadie's earlier motion to suppress had been denied), and petitioner was convicted.

In the ensuing direct appeal, appellate counsel argued that the trial court erred in denying Labadie's motion to suppress. The Louisiana Fifth Circuit Court of Appeal denied that claim, stating:

> [D]efendant argues that the trial court erred in denying his motion to suppress the evidence retrieved from the apartment. Defendant argues that the affidavit in support of the search warrant contained several factual inconsistencies, was deficient generally, and was based upon unreliable information. Conversely, the State asserts that the issuing judge had a substantial basis for concluding that probable cause existed, based upon the totality of the information provided.
>
> In determining whether the trial court's ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing but may also consider the evidence presented at trial. State v. Huntley, 08-125, p. 6 (La.App. 5 Cir. 5/27/08), 986 So.2d 792, 796. A trial court's determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. State v. Addison, 08-461, p. 12 (La.App. 5 Cir. 2/10/09), 8 So.3d 707, 716.
>
> Under La.C.Cr.P. art. 162, "[a] search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." This article requires that the facts establishing probable cause be recited in the

---

[29] State Rec., Vol. 2 of 14, Application for and Affidavit in Support of a Search and Seizure Warrant.

[30] State Rec., Vol. 6 of 14, transcript of July 18, 2013; State Rec., Vol. 1 of 14, minute entry dated July 18, 2013.

[31] State Rec., Vol. 6 of 14, transcript of September 12, 2013; State Rec., Vol. 5 of 14, minute entry dated September 12, 2013.

affidavit because it is the judge, not the affiant, who must be satisfied as to the existence of probable cause. State v. Clement, 11-1150, p. 11 (La.App. 5 Cir. 9/11/12), 101 So.3d 460, 468, writ denied, 12-2214 (La. 4/1/13), 110 So.3d 139. The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green, 02-1022, p. 8 (La. 12/4/02), 831 So.2d 962, 969.

In the present case, Detective Barteet's affidavit, submitted in support of a search warrant for defendant's apartment at 650 Bellemeade Boulevard, Apartment 4-K, provides that following an anonymous tip that specifically identified defendant by name, address and date of birth, the Jefferson Parish Sheriff's Office established surveillance of defendant for alleged distribution of heroin. The affidavit states that defendant had four convictions for violations relative to illegal narcotics possession and distribution. During surveillance, defendant was observed conducting a drug transaction; the buyer, Brook Franklin, was stopped and confirmed the sale of heroin to her by defendant. Defendant was subsequently arrested. On October 1, 2012, a reliable source of information told Detective Barteet that defendant was concealing a large sum of cash at his residence. During prior surveillance of defendant, agents had followed defendant to an apartment at 650 Bellemeade Boulevard in Gretna. A confidential source advised that defendant maintained a residence at that location. Based on the surveillance, the documented sale of heroin by defendant, as well as the information that he had hidden a large sum of money and the "totality of the investigation into Melancon's distribution of heroin," agents believed that defendant was concealing additional quantities of heroin and currency inside the residence. Agents confirmed defendant's residence at Apartment 4-K at 650 Bellemeade Boulevard. Finally, the affidavit provides that defendant's car, identified by make, model, and license plate, was registered to the apartment; agents also confirmed that defendant had made monthly rent payments as well.

At the hearing on defendant's motion to suppress, Detective Barteet admitted that there may have been a one day error in his affidavit which said that the hand to hand transaction took place on September 27, 2012, when it had, in fact, taken place on September 28, 2012. Also, Detective Barteet admitted that while he used the term "hand-to-hand transaction" in his affidavit, he did not actually witness a hand-to-hand transaction; rather, he saw evidence indicative of such a transaction. Detective Barteet testified that the person who purchased the drugs from defendant confirmed that it was a hand-to-hand transaction. With respect to the person who provided information that defendant had a large sum of currency in his apartment, Detective Barteet indicated in his affidavit that it was a reliable source.

At the conclusion of the hearing, the trial court denied defendant's motion to suppress, finding that based on the affidavit in support of the search warrant, the magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. We agree with the trial court.

Although there were some inconsistencies and incorrect statements in his affidavit, Detective Barteet confirmed that everything in his application for the

search warrant was correct to the best of his knowledge. The information presented in the affidavit provided probable cause for the issuance of the search warrant. Based on the testimony and evidence presented, we find that the trial court did not err in denying defendant's motion to suppress. This assignment of error is without merit.[32]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[33]

Petitioner now argues that his *new* counsel, Eddie Jordan, was ineffective for failing to *relitigate* the suppression issue *before the retrial* in this matter. Specifically, petitioner argues that Jordan should have pressed the trial court to consider a supplemental and reurged motion to suppress which attacked Barteet's affidavit on the grounds that the following statements contained therein were false:

(1)     the statement that Franklin admitted to purchasing heroin from petitioner in the transaction witnessed during the surveillance;

(2)     the statement that Barteet learned from a reliable source of information that petitioner was hiding $23,000 in cash in the Bellemeade apartment;

(3)     the statement that agents confirmed that petitioner was an occupant of the Bellemeade apartment and that he paid the rent each month;

(4)     the statement that agents observed "a hand-to-hand transaction" between petitioner and Franklin.

---

[32] <u>State v. Melancon</u>, 151 So. 3d 100, 111-12 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 14.
[33] <u>State v. Melancon</u>, 170 So. 3d 982 (La. 2015); State Rec., Vol. 1 of 14.

A criminal defendant can, of course, challenge the validity of a search warrant by arguing that that affidavit used to obtain the warrant was procured through false statements. As the United States Supreme Court has explained:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (emphasis added); accord State v. Turner, 263 So. 3d 337, 405 (La. 2018), cert. denied, No. 18-9710, 2019 WL 6257412 (U.S. Nov. 25, 2019). The United States Fifth Circuit Court of Appeals has observed:

> Although the Franks inquiry is often described as two prongs, the inquiry effectively consists of three questions, *all of which must be met*. First, does the affidavit contain a false statement? Second, was the false statement made intentionally or with reckless disregard for the truth? And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause?

United States v. Ortega, 854 F.3d 818, 826 (5th Cir. 2017) (emphasis added; citations omitted). For the following reasons, petitioner's claim fails under that analysis.

## A. The Statement Concerning Franklin's Admissions

As to the statement that Franklin admitted to purchasing heroin from petitioner in the transaction witnessed during the surveillance, petitioner does not contest that Franklin in fact made those admissions. However, he opines that the admissions were nevertheless untrue and that Barteet knew they were untrue because Mullins allegedly made contradictory statements.

However, even if Mullins gave contradictory statements to the police prior to the time the search warrant was issued, a fact that has not been conclusively established, petitioner has presented no evidence whatsoever that Barteet was aware of those contradictory statements. Further, in any event, such contradictory statements would not mean that Franklin was lying; it would be at least equally likely that it was Mullins who was lying.  After all, she clearly had a motive to be untruthful, i.e. to protect both herself and petitioner, whom she considered a friend.

Because petitioner has not shown that Franklin's admissions were false, counsel was not ineffective for failing to challenge the affidavit on this basis.

### B.  The Statement Concerning the Money in the Apartment

Barteet stated in the affidavit that he learned from a reliable source of information that petitioner was hiding $23,000 in cash in his residence and was attempting to have a family member remove it.  Petitioner argues that this statement was false because it was based on petitioner's own statements in the jailhouse telephone call, and he never identified the Bellemeade apartment as his residence in that call.  Again, it is true that petitioner simply stated that the money was in his apartment without indicating that his apartment was on Bellemeade; however, that is immaterial. As noted, Barteet had independent information from Franklin identifying the Bellemeade apartment as plaintiff's residence.[34]  Therefore, the statement simply was not false, and so counsel was not ineffective for failing to challenge the affidavit on this basis.

---

[34] See State Rec., Vol. 6 of 14, transcript of December 4, 2013, p. 54 (Franklin's testimony); State Rec., Vol. 7 of 14, transcript of December 4, 2013, p. 184 (Clement's testimony).

### C.  The Statements Regarding Petitioner's Occupancy of the Apartment

In the affidavit, Barteet stated that agents confirmed that petitioner was an occupant of the Bellemeade apartment and that he paid the rent each month.  Again, petitioner likewise has not established that this information was false.  On the contrary, Margie Barfield, the apartment complex's property manager, testified at trial that petitioner was the only person she ever saw use the apartment.[35]  She also testified that, after the initial payment, the rent was paid each month by money order, and that the only person who ever delivered such payments in person was petitioner.[36]

Because petitioner has not established that these statements were false, he necessarily has not established that counsel was ineffective for failing to challenge the affidavit on this basis.

### D.  The Statement Concerning the "Hand-to-Hand Transaction"

Petitioner argues that counsel should have reurged an argument that the statement that agents "observed" "a hand-to-hand transaction" take place between petitioner and Franklin was false.  However, that argument had already been explored in detail and found wanting at the suppression hearing held on the motion to suppress filed by petitioner's original counsel, Juan Labadie.

At that hearing, Labadie asked Barteet to explain the discrepancy between the affidavit and his police report which made no reference to "a hand-to-hand transaction," which led to the following exchange:

> A.     …  You're asking me did I use the term "hand-to-hand transaction" in my report?

---

[35] State Rec., Vol. 6 of 14, transcript of December 4, 2013, p. 90.

[36] Specifically, she said that Ms. McGinnis made the initial payment, that petitioner brought in two payments, and then other payments were simply left "in the drop box."  Id.

Q.      Not did you use the term, it's –

A.      Those words.  I apologize.

Q.      Did you state in your report, in your narrative, that you observed Mr. Melancon conduct a hand-to-hand transaction?

A.      I did not.

Q.      Okay.  Thank you.  In fact, what your narrative details is the fact that he got in the back seat of the Toyota, that the female got in the back seat – in the back seat of the Toyota, then – that she exited, and that she placed an unknown object in her right-hand pocket, correct?

A.      That's correct.

Q.      Okay.  There is no description of – there is no statement advising that you observed any of the events inside the vehicle, correct?

A.      That's correct, sir.

….

Q.      You state in – again, for clarification –

A.      "Conducted a hand-to-hand transaction with a white female in the parking lot of Popeye's in the 1500 block of Lapalco."

Q.      Okay.  And that is not in fact correct, correct?

A.      It's not a hand-to-hand transaction that's witnessed.  It's an encounter that – "hand-to-hand" kind of becomes a common term, I think, in narcotics land.  No, I did not see a hand-to-hand transaction.

Q.      Okay.

A.      But I saw evidence indicative of.

Q.      But that's not what you stated in your affidavit, correct?

A.      I used the term "hand-to-hand transaction."  Yes, sir.

Q.      Okay.  Well, you not only used the term "hand-to-hand transaction," but you in fact advised in your affidavit that you observed a hand-to-hand transaction, correct?

A.      I believe I advised we observed, but yes.

Q.      Agents observed?

A.      Well, we had confirmation of that after.

Q.      I'm just going – I understand that.  I appreciate that.

A.      Yes, sir.

Q.      I'm just asking you about what's in the four corners of the affidavit.

A.      In understand.[37]

In denying the motion to suppress, the trial judge stated:

[T]he Court does not find that there was a reckless disregard for the truth, does not find that the affiant provided false information by saying that they witnessed a hand-to-hand transaction, when it in fact appears that a hand-to-hand transaction did occur, supported by the fact that the female stopped said that a hand-to-hand transaction had been conducted.[38]

Like the trial judge, the undersigned finds that Barteet's statement was not intentionally false or made with reckless disregard for the truth.  It is true that agents did not see the drugs actually being placed from petitioner's hand into Franklin's hand.  However, they did observe the meeting between the two in the vehicle, saw Franklin putting something in her pocket as she exited the vehicle, and learned directly from Franklin that petitioner had in fact supplied her with drugs during the transaction.  Even if the statement that the agents "observed" "a hand-to-hand transaction" is not technically accurate in the strictest sense, that is not determinative.  Although a

---

[37] State Rec., Vol. 6 of 14, transcript of July 18, 2013, pp. 14-17.
[38] Id. at pp. 32-33.

search warrant must be issued based on a truthful showing of probable cause, the United States

Supreme Court has explained:

> This does not mean "truthful" in the sense that every fact recited in the warrant
> affidavit is necessarily correct, for probable cause may be founded upon hearsay
> and upon information received from informants, as well as upon information within
> the affiant's own knowledge that sometimes must be garnered hastily.  But surely
> it is to be "truthful" in the sense that the information put forth is believed or
> appropriately accepted by the affiant as true.

Franks v. Delaware, 438 U.S. 154, 165 (1978).  Further, "[a] statement in a warrant affidavit is not

false merely because it summarizes or characterizes the facts in a particular way."  United States

v. Hare, 772 F.2d 139, 141 (5th Cir. 1985).

Lastly, it must be further noted that this argument had already been fully litigated when

raised in the initial motion to suppress and preserved for the purposes of appeal.  It was therefore

both pointless and unnecessary for Jordan to reurge the same argument to the same judge who had

already rejected it as meritless.  Moreover, in that this issue was carefully considered on appeal

and the trial judge's ruling was upheld, petitioner cannot show that there is a reasonable probability

that the result of the proceeding would have been different if only Jordan had attempted to relitigate

this issue.

### III.  Legality of Petitioner's Arrest

Petitioner next contends that his counsel was ineffective for failing to challenge the legality

of his arrest.  That contention likewise has no merit for the following reasons.

When petitioner challenged the legality of his arrest on direct appeal, the Louisiana Fifth

Circuit Court of Appeal found that the claim was both procedurally defaulted and meritless,

stating:

In his third *pro se* assignment of error, defendant argues that the trial court erred by denying his motion to suppress where the police lacked reasonable suspicion and probable cause to arrest him. While defendant's counseled brief challenges the trial court's finding that the search warrant issued for defendant's apartment was supported by probable cause, in this *pro se* assignment, defendant further challenges the warrant by also claiming that his arrest was initiated without reasonable suspicion or probable cause.

The record reveals that in defendant's written motion to suppress, he did not brief the issue of whether there was reasonable suspicion to stop him or probable cause to arrest him. Furthermore, at the hearing on defendant's motion to suppress, the validity of defendant's arrest was not argued or considered by the trial court in making its ruling.

In State v. Dee, 09-712 (La.App. 5 Cir. 2/23/10), 34 So.3d 892, 901, writ denied, 10-705 (La. 10/29/10), 48 So.3d 1097, this Court noted that where the defendant did not challenge his arrest as illegal in a motion to suppress and apparently raised the issue for the first time on appeal, the issue was not preserved. See also La.C.Cr. P. art. 841. Similarly, in State v. Johnson, 07-1040 (La.App. 4 Cir. 9/10/08), 993 So.2d 326, 331, writ denied, 08-2649 (La. 6/5/09), 9 So.3d 868, the Fourth Circuit found that because defendant did not raise the issue of whether he was arrested without probable cause in the trial court, he was precluded from consideration of the issue for the first time on appeal.

In the instant case, because he failed to raise this issue in the trial court, defendant has waived any claim that he was detained without reasonable suspicion and arrested without probable cause. Nevertheless, even if the issue had been properly preserved for appellate review, we find it to be without merit. Based on the facts set forth in the record before us, there was reasonable suspicion to detain defendant and probable cause to arrest him. Defendant's third *pro se* assignment of error is without merit.[39]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[40]

This Court likewise finds that there was probable cause for petitioner's arrest. An officer may make a warrantless arrest when "there is probable cause to believe that a criminal offense has been or is being committed" based "upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Davenpeck v. Alford, 543 U.S. 146, 152

---

[39] State v. Melancon, 151 So. 3d 100, 114-15 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 14.
[40] State v. Melancon, 170 So. 3d 982 (La. 2015); State Rec., Vol. 1 of 14.

(2004); accord State v. Cojoe, 828 So. 2d 1101, 1104 (La. 2002) ("[P]olice officers may make warrantless arrests if probable cause exists, that is, when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." (internal quotation marks omitted)).  See also State ex rel. Bailey v. City of West Monroe, 418 So. 2d 570, 574 (La. 1982) ("Probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not be negated before making an arrest.").

Here, officers observed petitioner in a parking lot engaging in behavior consistent with drug distribution, and Franklin admitted to officers that she had in fact purchased heroin from petitioner in the observed transaction.  That, obviously, constituted probable cause for petitioner's arrest.  Therefore, any motion challenging the validity of the arrest would have been frivolous, and, as already discussed herein, counsel is not ineffective for failing to file meritless motions.

### IV.  Pretrial Investigation

Lastly, petitioner contends that counsels' pretrial investigation was inadequate because they failed to interview Mullins.  However, as an initial matter, this Court notes that petitioner has presented no evidence that Mullins was not in fact interviewed by counsel.  Without such evidence, it is equally possible that counsel interviewed her but found her to be incredible.[41]  For that reason alone, he has failed to meet his burden of proof with respect to this claim.  See, e.g., Johnson v. Cain, Civ. Action No. 08-4208, 2009 WL 2366385, at *7 n.26 (E.D. La. July 29, 2009)

---

[41] Of course, it is also possible that counsel attempted to interview Mullins but the effort was ultimately unsuccessful for some reason.

("[P]etitioner has presented no evidence whatsoever in support of his bald assertion that defense counsel failed to interview Harland [a trial witness]. Therefore, this claim [that his counsel was ineffective for failing to interview Harland prior to trial] necessarily fails even if considered on the merits.").

Moreover, in any event, even if petitioner had made that showing, he would then additionally have to prove that prejudice resulted from the inadequate investigation. To do that, he must point to evidence in the record demonstrating that further investigation would have revealed additional information beneficial to the defense. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Petitioner attempted to meet that burden by submitting an affidavit executed by Mullins on February 18, 2016.[42] In that affidavit, it is important to note that she does *not* state whether defense counsel ever interviewed her. However, even if they did not, the value of her information was minimal at best. In the affidavit, she stated: (1) she did not know petitioner to be a drug dealer; (2) Franklin picked her up on the day in question so that they could use drugs Franklin had purchased from "Chicken" in New Orleans East; (3) on the way to do the drugs, Franklin said she first had to retrieve her phone from petitioner; (4) Mullins "told the police that I didn't see [Franklin] buy drugs from [petitioner]"; (5) Mullins refused a plea deal that would have required her to testify against petitioner; and (6) Mullins believed that Franklin set up petitioner because

---

[42] State Rec., Vol. 4 of 14, Affidavit of Katherine Suzanne Mullins.

she was mad that he had sex with another person and because she wanted to get herself out of trouble.

Even if Mullins had given the same information to defense counsel, it was of minimal value in that it did not actually exculpate petitioner. The fact that she may not have known that petitioner was a drug dealer does not mean that he was not one. The fact that Franklin may have purchased drugs from "Chicken" earlier does not mean that she did not also purchase drugs from petitioner during this transaction. The fact Franklin wanted to retrieve her phone from petitioner does not mean that she did not also use their meeting to buy drugs from him. The fact that Mullins did not "see" Franklin buy drugs from petitioner does not mean that did not occur.[43] The fact that Mullins would not agree to a plea deal is immaterial to the issue of petitioner's guilt. Finally, the fact that Mullins believed that Franklin set up petitioner for other reasons is merely her opinion; moreover, even if Franklin did in fact have other reasons for implicating petitioner, that does not mean that she was not also being truthful when she said that she bought drugs from him.

Because none of the information from Mullins was clearly beneficial to the defense, and because her credibility is inherently suspect due to her friendship with petitioner, her own drug use, and her own criminal record, this Court cannot conclude that defense counsel were ineffective even if they failed to interview her.

For all of the foregoing reasons, the undersigned finds that all aspects of petitioner's ineffective assistance of counsel claim fail.

---

[43] This, of course, is assuming that she did not in fact see the transaction. In the affidavit, she says only that she "*told the police* that I didn't see [Franklin] buy drugs from [petitioner]." (Emphasis added). She does not expressly say that what she told the police was true.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Raymond Melancon be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this ___20th___ day of February, 2020.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

26